The judgment of the court of common pleas will be reversed and the case remanded for a new trial.

**Metcalfe** and **Pollock, JJ.,** concur.

---

## CHASTITY—CRIMINAL LAW.

[Montgomery (2nd) Circuit Court, December 23, 1910.]

Rockel, Dustin and Allread, JJ.

CHRISTINA SMITH v. STATE OF OHIO.

**1. Reputation of House to Room of Which Minor under Seventeen Years Taken for Illicit Intercourse Admissible in Prosecution for Contributing to Her Delinquency.**

Where a person is charged under Sec. 1654, G. C., with contributing to the delinquency of a minor under seventeen years of age, by renting a room to her for the purpose of illicit intercourse, and the testimony shows that the minor went there for that purpose, it is not error to permit testimony to be given as to the reputation of the house in which such room is located.

**2. Duty of Owner of Assignation House to Know that Visitors and Servants Obey Law.**

Where a person owns and conducts a house of ill-repute, the duty is imposed on her to know that those whom she permits in her house and to act apparently as her servants, shall obey the law, and in case they do not she as principal and proprietor of the house in which the delinquency occurs is liable to pay the penalty of the statute.

**3. Owner of House of Assignation Guilty of Contributing to Delinquency of Minor Admitted by Servant.**

A person owning and conducting a house of ill-repute is guilty of contributing to the delinquency of a minor under seventeen years of age, where it is shown that such minor was admitted by a person apparently acting as a servant or employe and making no inquiry as to the age of the minor.

**4. Charge in Entirety Understood to Correctly Apply Law not Erroneous Because Some Statements not Clear.**

Where the charge of the court, taken in its entirety, is such that it is evident that the jury understood it in a manner so as to correctly apply the law, it will not be held erroneous even though it contains some statements that are not strictly clear or proper.

ERROR to common pleas court.

*Nevin & Kalbfus,* for plaintiff in error.
*Carl W. Lenz,* for defendant in error.

**ROCKEL, J.** (Orally.)

The plaintiff in error was tried in the juvenile court (Secs. 1639 to 1683, G. C.), the affidavit charging the offense being as follows:

"Before me, Roland W. Baggott, judge and ex-officio clerk of the probate court in and for said county, personally came Carl W. Lenz, who, being duly sworn according to law, deposes and says, that on or about April 30, 1910, at the county of Montgomery aforesaid, one Christina Smith then and there being, did aid, abet, cause, encourage and contribute toward the delinquency of Madeline Shultz and Marjorie Spear then and there minors under the age of seventeen years, to wit, of the age of sixteen years, in this, to wit: that she the said Christina Smith did on or about April 30, 1910, rent to the said Madeline Shultz and Marjorie Spear and Edward Grimes and John Young, a room for the purpose of illicit intercourse and in divers other ways and times she the said Christina Smith did willfully and unlawfully contribute toward the delinquency of the said minors, Madeline Shultz and Marjorie Spear, she the said Christina Smith well knowing the said Madeline Shultz and Marjorie Spear to be such minors contrary to the statute in such case made and provided."    *    *    *

The case was submitted to a jury and the jury returned a verdict for the state; a motion was filed to set aside the said verdict and the same was overruled; the plaintiff in error then filed her petition in this court alleging the usual grounds of error, the verdict not supported by sufficient evidence, contrary to law and for error occurring in the trial of the case. One of the principal contentions of error was in reference to the admission of testimony introduced establishing the reputation of this house and of the place where it was charged that these persons went upon that occasion. There are cases to be found upon both sides of this proposition, but we think that the authorities

Smith v. State.

support the contention principally that such testimony may be introduced. Wigmore, Evidence Sec. 78, says:

"If it distinctly appears in the statute that the repute of the house is the essential criminal fact, so that merely to keep a house of that reputation is the offense, then the reputation is a fact in issue, and the reputation may be shown, irrespective of the actual character or use of the house."

Now, I might call attention to the statute (Sec. 1644, G. C.) in this respect, charging what would constitute a delinquency— one of the phrases being as follows: "or who knowingly visits or enters a house of ill-repute." Ill-repute of itself means bad reputation and therefore to enter a house of that kind it becomes one of the elements of the crime. In another place Wigmore has this statement, Sec. 204:

"It has already been seen (ante, par. 78) that, apart from statutes constituting the repute of the house as the sole element of the crime of professional pandering, the character or use of the house and the character or occupation of the inmates may come into issue. Two questions having a bearing here are thus presented: (1) May particular instances of prostitution in the house be offered, as showing its habitual use or character? (2) May particular acts of prostitution by the inmates be offered, as showing their occupation or character as prostitutes? Both these questions should be answered in the affirmative, for the same reasons as in the preceding class of cases."

I might say further that in this case the evidence unquestionably shows that these girls had been in this house before and went there for the purpose of prostitution. So it seems there is no doubt of that question being proved and that there was no error in the admission of the testimony as to reputation.

Another matter relied upon in error is the charge of the court. To be properly understood it is necessary to give it in its entirety:

"Before you enter upon your duties it is incumbent upon the court to charge you upon the law that is considered applicable to the case; such is the court's duty and it is your duty to act in accordance therewith. You, however, are the sole judges of

the facts and you are not to be guided by anything counsel might say to you, or that the court might say to you.

"This is a case wherein the defendant, Christina Smith, is charged with aiding, abetting, causing, encouraging and contributing towards the delinquency of one Madeline Shultz, a minor, under the age of seventeen years. To this charge the defendant has entered a plea of not guilty, which puts the matter in issue before you."

Then the charge quotes the sections of the statutes and continues:

"You are not interested with the amount of the fine; that you have nothing to do with; but whoever aids, abets, entices, encourages or contributes towards the delinquency of a minor, and then provides what the penalty shall be.

"You are to find in this case that on or about April 30, 1910, that Christina Smith did aid, abet, cause, encourage towards the delinquency of Madeline Shultz; you are also to find that beyond a reasonable doubt.

"You are to find beyond a reasonable doubt that on April 30, 1910, that Madeline Shultz was then a minor under the age of seventeen years. This as I say, you are to find beyond a reasonable doubt, and that is a doubt that may, or rather an honest uncertainty that may exist in the mind of a candid impartial juror having a full and careful consideration of all the testimony, having the sole desire to ascertain the truth, not a mere speculative doubt voluntarily excited in your mind to avoid the rendition of disagreeable verdict.

"You are to find, of course, that this offense was committed in Montgomery county, state of Ohio.

"There has been some testimony introduced in this case to show the reputation of Madeline Shultz for chastity before April 30. The testimony might indicate that that reputation for chastity before that time was bad, and that the reputation of Marjorie Spear and Marie Shultz was bad. With that you are solely concerned as to their right to be believed. Their veracity, their credibility, whether or not they were good girls in nowise concerns you.

Smith v. State.

"You must find that when you find that they are guilty or when you find that this defendant is guilty of an offense, that Madeline Shultz was under the age of seventeen years on April 30; further than that you have nothing to do with her reputation.

"And I also charge you as a matter of law if you find beyond a reasonable doubt that Madeline Shultz was under the age of seventeen years on April 30, 1910; that she in company with anyone went to the house of Christina Smith on or about the date named in the affidavit and you find that the house conducted by Christina Smith was one of assignation, and a place where persons of opposite sex met for the purpose of illicit intercourse, in determining the guilt or innocence of this defendant, it is not necessary that said Christina Smith had actual knowledge of the presence of said Madeline Shultz. As I charge you, and as I believe the law views it, it is her business to know. She is to satisfy herself and if you find all these things to be true beyond a reasonable doubt, your duty would be to return a verdict of guilty.

"If you do not so find beyond a reasonable doubt it will be your duty to return a verdict of not guilty."

The objection made to this charge is that the court in effect told the jury that they must find certain things by not putting it in the alternative, but we think that the jury was not misled by this charge; that they understood fairly well from it that they must find all these things, as stated in the conclusion of the charge, these things, beyond a reasonable doubt. It is true the charge might have been better upon that question and ought, perhaps, to have been stated in the alternative, but trial courts sometimes inadvertently with the numerous matters that arise in the trial of a case do not state all things as plainly as they should be. We think, however, the jury was not misled in this charge that they knew what they were to find and how they were to come to that conclusion—they must find all these things beyond a reasonable doubt.

Another question raised is whether the verdict is sustained by the testimony or the weight of the evidence. There is no direct testimony offered in this case that Christina Smith was.

actually present in this house when these girls were there, or that she actually did know that they were there at the time alleged, and it is argued that in a charge of this kind she could not be convicted under the statutes unless it be shown that she had knowledge that these people were there. The testimony shows conclusively that Madam Smith lived there—a number of persons testified to that fact; had for twenty-five years one person testified—and these people, John Young and Grimes, the young men who went with these girls, had been in this house before for the express purpose of assignation. Marjorie Spear had been in this house before for that purpose; and when they were there before they saw Madam Smith in charge. Now, then, when these young people met at Lafayette Hall for the purpose, for the express purpose of going to this place for assignation, they went there because they knew or testified that they knew, that it was a place of that character. When they went there the person that let them in was a maid, it was not Madam Smith, because they knew Madam Smith; it was some one apparently in charge of the house; the maid, a person who let them in the door, assigned the rooms to them and came afterwards to collect the toll. So it seems that they were justified in believing that this person was the maid of Madam Smith and that Madam Smith was still the proprietor. However, as to the testimony of Madam Smith being present at this time, we have the testimony of John Young, one of the parties, who says that he saw her in the morning. These people stayed there all night and left next day about 10 or 11 o'clock. He says he saw her in the morning; he personally knew who she was. Marjorie Spear saw her in the morning; she knew her because she had been there before. During the time that they were there some one called up from down stairs telling them that they should not make so much noise. This wasn't the maid, as they all testify. So we think that the testimony would support the finding of the jury that she really was there, and a maid in her employ who was in charge. The maid didn't ask the girls their age; no inquiry was made upon that question there or at a previous time they were there. There is a line of cases in Ohio which seems to be proper to be followed

in cases of this kind. In the "sale of oleomargarine at retail," a case reported in *Williams* v. *State,* 25 O. C. C. 673 (4 N. S. 193), affirmed without opinion, *Williams* v. *State,* 69 Ohio St. 570, in the syllabus it is said:

"1. Where an affidavit charges one with unlawfully selling oleomargarine and the evidence shows that the sale was made by an employe, who was authorized to sell the article, this·is not a variance. It was not necessary to allege that the sale was made by an agent or employe. In misdemeanor all are principals.

"2. * * * where the oleomargarine was sold by a clerk in the store of the accused, who was engaged in the business of selling oleomargarine to the public, with other merchandise and who authorized its sale by his clerks, in the ordinary course of business, it is no defense that he had instructed such clerk and all of his clerks in the store, not to sell oleomargarine, except under its true name. * * *

"3. One who engages in the business of selling oleomargarine to the public and permits and authorizes its sale by his clerks or employes, is bound to see that the law regulating its sale is complied with, and if it is violated by such employes or clerks, the employer is liable under the statute."

In the case at bar, at least, the state made out a *prima facie* case, when it showed that these persons went there, and some person apparently in authority permitted them to enter the house. If this person admitting them was not a person in authority or there was a defense that Madam Smith did not know or had no opportunity of knowing the age of this child, she could have made a defense of that character. The opinion in the last quoted case is quite lengthy. Several intoxicating liquor cases are cited in support, one from Wisconsin: "The sale of intoxicating liquors to a minor is an offense under Sec. 1, Chap. 128, though the vendor does not know that the purchaser is a minor." And then there is cited the case *State* v. *Kelley,* 54 Ohio St. 166 [43 N. E. Rep. 163].

"An affidavit to charge a violation of the act of March 20, 1884, Section 8805, 'to provide against the adulteration of food

and drugs' need not charge that an adulterated article of food is sold to be used as human food.

"In a prosecution under said act, it is not a defense that the accused is ignorant of the adulteration of the article which he sells or offers for sale."

At the conclusion of *Williams* v. *State, supra,* this language occurs which we think is applicable to the case at bar:

"We think in holding as we do, we are following the principles and spirit of the case in the 54th Ohio St. In the absence of a decision directly in point, we are of the opinion it ought to be the law, and we hold it to be the law, that where one engages in a business of this kind, he does it at his peril, and that the duty is imposed upon him to know that those whom he employs to sell this article to the public obey the law in the manner of selling it, and in case they do not, that he, as the principal and proprietor of the establishment, is liable to pay the penalty assessed by the statute. We feel that any other holding would practically destroy this statute and thwart the object and purpose that the legislature had in view. We believe it to be a wholesome law and that it should be construed so that it may be enforced."

The judgment of the court below will be affirmed.

**Dustin** and **Allread, JJ.,** concur.